IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SETH M. JOHNSON,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | No. 17-CV-3045-LTS<br><br>**REPORT AND RECOMMENDATION** |

_____

Plaintiff Seth M. Johnson seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Johnson argues that the administrative law judge (ALJ) erred in failing to include in his residual functional capacity (RFC) a limitation related to interacting with coworkers and supervisors, which he contends is supported by all the medical opinions in the record. He also argues that the ALJ erred in assigning little weight to the opinion of his treating physician based on a lack of recent treatment, as Johnson contends he submitted updated treatment records, but they were

---

[1] Nancy Berryhill is no longer the Acting Commissioner of Social Security, although she still leads that agency as the Deputy Commissioner. *See Edwards v. Comm'r of Soc. Sec*, No. 7:17-CV-00052-RN, 2018 WL 1413974, at *1 n.1 (E.D.N.C. Mar. 21, 2018). I substitute the Commissioner of Social Security for Ms. Berryhill in accordance with Federal Rules of Civil Procedure 17(d) and 25(d). *See also, e.g.*, *Gates v. Comm'r, Soc. Sec. Admin.*, 721 F. App'x 575 (8th Cir. 2018) (per curiam); *Stanley v. Comm'r, Soc. Sec. Admin.*, 720 F. App'x 818 (8th Cir. 2018) (per curiam); *Shelton v. Comm'r, Soc. Sec. Admin*, 716 F. App'x 574 (8th Cir. 2018) (per curiam).

misplaced. I recommend **reversing** the Commissioner's decision and **remanding** for further proceedings.

## I. BACKGROUND[2]

Johnson filed applications for DI and SSI benefits on August 16, 2011, alleging disability since his birth in 1981. Doc. 14 at 2. He had previously filed applications for DI and SSI benefits in August 2010, which were denied on initial review in February 2011. AR 259, 265, 376.[3] In connection with this prior determination, in December 2010, state agency psychological consultant Dr. David Christiansen, PhD, reviewed Johnson's treatment records to formulate an opinion of Johnson's mental RFC.[4] AR 494-96. Dr. Christiansen found Johnson moderately limited in his ability to work in coordination with others and in his abilities to interact appropriately with supervisors and the general public, concluding that Johnson would likely "have difficulty . . . relating with others in the workplace in an appropriate manner." *Id.*

Johnson's August 2011 applications were denied on initial review and on reconsideration, and two additional state agency psychological consultants evaluated Johnson's mental RFC in connection with those reviews. AR 119-58. In October 2011, Dr. Beverly Westra, PhD, found Johnson moderately limited in his abilities to interact with his coworkers and the general public, noting that "[h]e will be distracted working closely with others" and that he could only "work around a small number of familiar

---

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 14).

[3] "AR" refers to the administrative record below, filed at Docs. 10 to 11-7.

[4] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

2

persons in predictable environments." AR 124-26. In February 2012, Dr. Myrna Tashner, EdD, affirmed Dr. Westra's findings. AR 141-43.

Johnson requested a hearing before an ALJ. The first hearing was held on March 13, 2013. AR 30-31. The ALJ heard testimony from Johnson but decided that another hearing was necessary due to missing medical records and also to give Johnson the opportunity to obtain counsel. AR 33-46. A second hearing was held on July 11, 2013, with Johnson once again appearing without representation. AR 47-48. Johnson, his mother, and a vocational expert testified. AR 48, 63. Johnson obtained counsel, and a third hearing was held on October 29, 2013. AR 80, 230. Johnson, his mother, and a vocational expert again offered testimony. AR 81. Johnson's counsel submitted additional RFC opinions from Johnson's treating physician, Dr. Larry Standing, DO, and from his treating psychiatrist, Dr. William Crowley, MD. AR 858-62, 893-98.

The ALJ issued an opinion on November 8, 2013, finding Johnson not disabled. AR 1014-1024. The Appeals Council declined review (AR 1-3), and Johnson appealed to this court. *See* No. 15-CV-3126-MWB (N.D. Iowa). One of the issues Johnson raised was that the ALJ's RFC determination did not include any social functioning limitations, despite Dr. Crowley's and all the state agency psychological consultants' opinions containing such limitations and despite the ALJ finding Johnson suffered from moderate social limitations at step three. *Id.*, Doc. 13 at 22-23. After Johnson filed his brief, the Commissioner moved for the action to be remanded "for further evaluation of the medical opinions and reassessment of plaintiff's [RFC]." *Id.*, Doc. 14. The district court granted the Commissioner's motion, and the case was remanded for further administrative proceedings. AR 1073. The Appeals Council remanded the case to the ALJ with instructions suggesting that the RFC should be reformulated to reflect Johnson's moderate difficulties in social functioning. AR 1081-83.

3

In July 2015, while his appeal was pending in this court, Johnson filed another application for SSI benefits. AR 944, 1228. In September 2015, state agency consultant Dr. Jonathan Brandon, PhD, evaluated Johnson's mental RFC in connection with the initial disability determination. AR 1051-53. He found Johnson moderately limited in his ability to work in proximity to others and in his ability to interact appropriately with the general public. AR 1051-52. He concluded that Johnson "experience[s] some limitation to his functioning from his mental [impairments], including some difficulty . . . getting along with others at times," such that Johnson could only work in a "setting with reduced social interaction." AR 1052-53. Dr. Tashner affirmed Dr. Brandon's assessment on reconsideration in November 2015. AR 1067-68.

Johnson's July 2015 application for SSI benefits was consolidated with his August 2011 applications for DI and SSI benefits when those claims were remanded to the Social Security Administration from this court. AR 944. The ALJ held another hearing on July 14, 2016, at which Johnson and a vocational expert testified. AR 978-79. At the request of Johnson's attorney, the ALJ allowed the record to be kept open for three weeks, since Johnson had an upcoming appointment with Dr. Standing scheduled for July 26, 2016, and his attorney wished to submit the records from that appointment. AR 980-81. The treatment notes from this appointment are not in the record; although there is a new exhibit with treatment notes from Dr. Standing labeled "Office Treatment Records dated 08/29/2011 to 07/26/2016, from LARRY STANDING" (exhibit 34F), it consists entirely of duplicates of treatment notes from 2011 through 2013 that were already in the record. *See* AR 558-60, 587-89, 625-42, 855-72, 1492-1525. A new RFC opinion from Dr. Standing appears in the record, however, formulated in August 2016 (exhibit 35F). AR 1526-30. In addition, Johnson submitted a mental RFC assessment from his new treating psychiatrist, Dr. Muhammad Chowdhry, MD, completed in June 2016. AR 1475-80.

4

The ALJ issued his second written decision on September 28, 2016. AR 943-62. Once again, the ALJ denied Johnson benefits, following the familiar five-step process outlined in the regulations.[5] At step one, although the ALJ noted that the claimant had engaged in substantial gainful activity since his alleged onset date in 1981, the ALJ found that "there were consecutive 12-month periods in which the claimant did not engage in substantial gainful activity." AR 946. At step two, the ALJ found Johnson suffered from "the following severe impairments: depression, anxiety, substance abuse history, degenerative disc disease, tremors, and attention deficit/hyperactivity disorder (ADHD)." AR 946. At step three, the ALJ found that Johnson's impairments did not meet or equal a listing. AR 946-47. At step four, the ALJ found that Johnson could not perform his past work, but at step five, the ALJ found Johnson could perform other work. AR 960-62.

To determine Johnson's ability to work at steps four and five, the ALJ evaluated Johnson's RFC:

> [Johnson] has the [RFC] to perform light work . . . such that [Johnson] could lift 20 pounds occasionally, 10 pounds frequently. He could only occasionally balance, stoop, kneel, crouch, crawl, or climb. He would be limited to simple, routine, and repetitive work. He should have no contact with the public. There should be no specific production-rate requirements.

AR 948. In making this determination, the ALJ considered the RFC opinions in the

---

[5] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

5

record. AR 955-57, 960. The ALJ assigned Dr. Standing's opinions little weight. AR 955-56. With regard Dr. Standing's 2016 opinion, the ALJ relied (at least in part) on the lack of "contemporaneous treatment records suggesting the claimant was receiving . . . ongoing medical care from Dr. Standing," finding it "[s]ignificant[]" that "based on the record, it appeared [Dr. Standing] last treated [Johnson] in October 2013." AR 956. The ALJ also assigned little weight to the opinions of Johnson's treating psychiatrists. AR 956-57. The ALJ assigned great weight to the state agency psychological consultants' opinions, noting generally that they all found Johnson capable of working in a "setting with reduced social interaction." AR 960. The ALJ cited the exhibits containing Dr. Christiansen's opinion, Dr. Brandon's opinion, and Dr. Tashner's November 2015 opinion, but not the exhibits containing Dr. Westra's opinion or Dr. Tashner's February 2012 opinion.[6] AR 960.

Johnson requested Appeals Council review of the ALJ's decision. AR 1222-26. One of his arguments in support of review related to the existence of more recent medical records from Dr. Standing:

> The [ALJ] apparently did not recognize, although he refers to it on Page 10 of 10 of his opinion, Exhibits 34F and 35F, which shows 40 pages of medical records, which show a longitudal record of treatment, which the [ALJ] failed to recognize. Apparently, when Dr. Standing sent his opinion in, he neglected to send in the medical records substantiating it, which claimant's counsel provided after the hearing when this was brought to his attention. The fact that these medical records became part of the record in this case was not noted by the [ALJ] in his opinion.

AR 1223. In December 2016, the Appeals Council sent Johnson's attorney a letter, noting that his "correspondence suggests that [he] might have additional arguments and/or materials that [he] might wish to present to the Appeals Council." AR 976. The Appeals

---

[6] The ALJ also cited exhibits (B5F and B6F) containing a physical RFC opinion from February 2011. AR 517-22, 960.

Council gave Johnson thirty days "to submit further materials." AR 976. After no such materials were received, the Appeals Council denied Johnson's request for review on March 22, 2017 (AR 932-36), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Johnson filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 15, 16, 17), and the Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Johnson argues that although the ALJ assigned the state agency psychologists' opinions great weight, those opinions do not support the ALJ's RFC assessment, as they suggest that Johnson's ability to interact with coworkers and supervisors is limited. Doc. 15 at 11-14. Johnson also argues that the ALJ erred in failing to specifically cite Dr. Westra's opinion and Dr. Tashner's February 2012 opinion. *Id.* Johnson also challenges

7

the reasons given by the ALJ for discounting Dr. Standing's 2016 RFC opinion. *Id.* at 4-8. Johnson's primary argument is that Dr. Standing's treatment notes from 2016 were submitted to the Social Security Administration, but misplaced. *Id.* And if not, Johnson argues that the ALJ should nevertheless have obtained the 2016 treatment records from Dr. Standing. *Id.* at 9-11.

### A. *State Agency Psychological Consultants' Opinions*

The ALJ found that Johnson could have no contact with the public but included no limitations on Johnson's ability to interact with coworkers or supervisors. Johnson argues that the state agency psychological consultants' opinions support that he suffers limitations in interacting with coworkers and supervisors,[7] and he argues that the ALJ erred in failing to include such limitations in his RFC—or at the very least, in failing to explain why such limitations were not adopted.

In addition to finding Johnson moderately limited in his ability to interact with the public, all five of the state agency psychological consultants found Johnson moderately limited in his "ability to work in coordination with or in proximity to others without being distracted by them." AR 125, 141, 494, 1051, 1067. In addition, two of the state agency opinions note moderate limitations in Johnson's "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes" (but three reflect no significant limitations in this category). AR 125, 142, 495, 1052, 1067. All of the state agency opinions conclude in a manner suggesting that Johnson suffers from some limitations in his ability to be around coworkers, noting that Johnson "will be distracted

---

[7] Johnson actually argues that "four of six" agency opinions support such limitations, counting Dr. Christiansen's opinion—contained across two exhibits—twice. As will be discussed, I find there is some support for such limitations in Drs. Brandon's and Tashner's 2015 opinions as well.

8

working closely with others" and could only "work around a small number of familiar persons in predictable environments"; that Johnson would likely "have difficulty . . . relating with others in the workplace in an appropriate manner"; and that Johnson has "some difficulty . . . getting along with others at times" and can only work in a "setting with reduced social interaction." AR 126, 142, 496, 1052-53, 1068. When considering each opinion as a whole, all of the state agency consultants' opinions support some limitation in Johnson's ability to work with or be around coworkers.

The ALJ purportedly gave the opinions of the state agency consultants "great weight," but the ALJ did not limit Johnson's RFC to working around only a small number of coworkers. AR 948, 960. This despite the ALJ recognizing that the state agency consultants' opinions support that Johnson can only "perform[] simple, repetitive tasks . . . in a work setting with reduced social interaction." AR 960. Although the ALJ limited Johnson from working with the public, his RFC could still encompass work settings without reduced social interaction—e.g., settings that require a lot of interaction with coworkers.[8] The ALJ's RFC determination must be supported by at least some

---

[8] Moreover, when Johnson's attorney attempted to ask the vocational expert at the hearing about a moderate limitation in ability to work in coordination with or proximity to others (the limitation agreed upon by all the state agency psychological consultants), the following exchange occurred:
>Q: Do any of these jobs that you listed -- if we were to indicate that the person would be unable for up to 20 -- for more than 20 percent of the workday or work week, would be unable to work in coordination with or proximity to others without being distracted by them, would that preclude competitive employment?
>A: I'm a little confused. Are they working at a slow pace, or they can't be around others?
>Q: Can't be around others.
>A: Can't be around others.
>Q: Coordination with or proximity to others.
>A: An isolated job?
>Q: Could he do those jobs you listed?
>A: That would preclude employment.

AR 1008-09.

9

medical evidence from a medical professional that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). As the only other mental RFC opinions in the record are from Drs. Crowley and Chowdhry, Johnson's treating psychiatrists who found Johnson more limited than the state agency consultants,[9] no medical opinion supports the ALJ's mental RFC determination. Thus, "some medical evidence" does not support the ALJ's failure to include a restriction related to coworkers in his RFC assessment. *See Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once"); *cf. Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (holding some medical evidence supported the ALJ's RFC determination when the ALJ conducted an independent review of the medical evidence to form an RFC consistent with the state agency consultants' opinions); *Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (same); *Anderson v. Shalala*, 51 F.3d 777, 779-80 (8th Cir. 1995) (same).

With regard to Johnson's ability to get along with supervisors, only Dr. Christiansen found moderate limitations in accepting instructions and responding appropriately to criticism; the four other state agency opinions reflect no significant limitations in that category. AR 125, 142, 495, 1052, 1067. Indeed, Dr. Westra's

---

[9] With regard to ability to "work in coordination with or proximity to others without being distracted by them," Dr. Crowley found Johnson markedly limited, and Dr. Chowdhry found Johnson moderately limited. AR 896, 1478. With regard to ability to "get along with co-workers or peers without distracting them or exhibiting behavioral extremes," both psychiatrists found Johnson markedly limited. AR 896, 1478. With regard to ability to "maintain socially appropriate behavior," Dr. Crowley found Johnson moderately limited, and Dr. Chowdhry found Johnson markedly limited. AR 896, 1478-79.

opinion and Dr. Tashner's February 2012 opinion specifically note that Johnson "gets along well with those in authority."  AR 125, 142.  Although it seems likely that the opinions of Drs. Brandon, Westra, and Tashner could constitute "some medical evidence" to support the ALJ's failure to include a limitation related to interacting with supervisors in Johnson's RFC, Johnson takes issue with the ALJ's failure to evaluate their opinions separately from Dr. Christiansen's.  Johnson's point is well-taken.  Under Social Security Ruling (SSR) 96-6p, ALJs "are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."[10]  61 Fed. Reg. 34466, 34467 (July 2, 1996).  Here, the ALJ lumped all the state agency psychological opinions together when discussing them, failing to acknowledge that Dr. Christiansen limited Johnson's ability to interact with supervisors.  AR 960.  Several district courts in the Eighth Circuit have held that remand may be appropriate when the ALJ purportedly gives "great weight" to the opinion of a state agency consultant but fails to adopt some of the limitations contained

---

[10] This rule also finds support in the regulations.  The regulations in effect at the time of the ALJ's decision specifically provided that "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency . . . psychological consultant . . . , as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]."  20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (2016).  The new regulations that went into effect in March 2017 for "[e]valuating opinion evidence for claims filed before March 27, 2017," suggest that this is still the rule (without explicitly stating so), noting that "[t]he rules in [§ 404.1513a and § 416.913a] apply [to state agency opinions] except that when an [ALJ] gives controlling weight to a treating source's medical opinion, the [ALJ] is not required to explain in the decision the weight he or she gave to the prior" state agency opinion.  20 C.F.R. §§ 404.1527(e), 416.927(e) (2018); *see also* 20 C.F.R. §§ 404.1513a(b), 416.913a(b) ("[ALJs] will consider prior administrative medical findings and medical evidence from . . . State agency . . . psychological consultants . . . according to [§§ 404.1520b & 416.920b ("How we consider evidence")], [404.1520c & 416.920b (applicable only to claims filed after March 2017)], and [404.1527 & 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017")]."

11

in that opinion without explanation. *See McCaskill v. Berryhill*, No. 4:17-CV-04121-KES, 2018 WL 2144553, at *19-21 (D.S.D. Apr. 20, 2018) (recommending holding that substantial evidence did not support the ALJ's RFC determination when the ALJ gave "great weight" to the state agency consultant's RFC opinion but failed to include many limitations imposed by that opinion, thus neglecting to "explain *what portions* of [the opinion] are rejected and *why*"), *report and recommendation adopted*, 2018 WL 2138659 (D.S.D. May 9, 2018); *Webster v. Astrue*, 628 F. Supp. 2d 1073, 1090-92 (D. Neb. 2009) (holding that remand was required when the ALJ purportedly "agree[d] with the detailed analysis" of the state agency consultants but failed to include in the RFC many of the moderate limitations found by the state agency consultants, which the vocational expert testified in combination would prohibit sustained work); *see also Sanders v. Astrue*, No. CIV. 11-1356 (JNE/JJG), 2012 WL 1657922, at *12-13 (D. Minn. Apr. 17, 2012) (recommending holding that when the ALJ "professed to place significant weight on" the state agency psychological consultant's opinion but did not restrict the claimant to "brief" and "superficial" interaction with others, as the state agency consultant had, "[t]he case should be remanded so that the ALJ can incorporate [additional limitation] or explain why he rejected these limitations"), *rejecting report and recommendation in relevant part*, 2012 WL 1658988 (D. Minn. May 11, 2012) (holding that remand was not required because substantial evidence otherwise supported "the ALJ's decision regarding [the claimant's] recommended interaction with coworkers," and because the work the ALJ found the claimant could perform did not seem to require more than brief and superficial contact with coworkers); *cf. Lockwood v. Colvin*, 627 F. App'x 575, 577 (8th Cir. 2015) (holding that when the ALJ failed to address the weight given to the state agency consultants' opinions, remand was not required because the medical consultant

12

was not an acceptable medical source and the psychological consultant's opinion was not inconsistent with the ALJ's RFC determination).

The Commissioner does not specifically respond to Johnson's argument about the ALJ's failure to set forth reasons for rejecting some of the limitations found by the state agency consultants. Instead, the Commissioner argues that "[t]he record does not support" the additional *mental* RFC limitations related to coworkers and supervisors because (1) a state agency medical consultant and one-time consultative examiner "found no *physical* reason why plaintiff could not work" in 2011;[11] (2) treatment records from 2008, 2009, and 2010 suggest that the claimant was working or looking for work, which the ALJ found inconsistent with disabling mental limitations;[12] and (3) Dr. Chowdhry's 2016 mental status examinations reflect normal attention, concentration, mood, and affect and that the claimant was "doing fairly well" on medications. Doc. 16 at 14-15 (emphasis

---

[11] *See* AR 513-15, 517.

[12] The treatment records reflect that Johnson had difficulty maintaining a job for a long period of time, which actually supports the opposite conclusion of the ALJ. In October 2007, Johnson reported that he had just started working at Schwan's, delivering frozen food. AR 728-29. By November 2007, he no longer had a job. AR 731. In February 2008, he reported that he was beginning work as a forklift operator in a factory. AR 733. By August 2008, he was no longer working. AR 735. In November 2008, he reported working as a manager at a fast-food restaurant, but by February 2009, he had lost that job due to "lots of problems with work" and was once again looking for employment. AR 737, 739. He was still looking for work without success in May 2009. AR 741. In August 2009, he reported working at a fast-food restaurant, but not in a management position, as "it was not worth the money." AR 743. He still had a job in November 2009 and reported working thirteen hours a day but "still taking time off for himself." AR 745. He reported quitting in December 2009. AR 747. In May 2010, he reported looking for work. AR 573. In September 2010, he reported losing numerous jobs due to his "inability to work a steady schedule." AR 569. In December 2010, he had applied for restaurant work and had been doing some bookkeeping. AR 689. It does not appear that he continued looking for work after that point. *See* AR 579, 685. The record reflects that from 2008 through 2010, Johnson attempted to find work, but he was barely able to last at any given job for more than a month, which is not inconsistent with mental disability (as found by the ALJ).

13

added). It is unclear how this evidence shows that Johnson would have no problems interacting with supervisors and coworkers, as opposed to the public. The ALJ offered no discussion as to why he did not include any limitation related to Johnson's ability to interact with coworkers or supervisors.

Treatment records support that Johnson had difficulties interacting with people. *See* AR 695, 697 (November 2010: Johnson reports he is "annoying to others" during manic phases and has "some social anxiety" but can also be "outgoing" at times); AR 691-93 (November 2010: Johnson reports avoiding social settings due to anxiety, that he "just [doesn't] like people," and that he becomes angry and agitated during manic phases, which occur twice a month and last a few days; provider notes affect is irritable and constricted); AR 689 (December 2010: Johnson reports being "verbally obnoxious" and irritable during manic phases; provider notes "calmer" and "much less angry today"); AR 546 (January 2011: Johnson reports that he would like a job, but he has "trouble interacting with other people so he'd need to be doing something where he's mainly by himself"); AR 688 (March 2011: Johnson reports feeling agitated and irritable during manic periods, which last a few days, but symptoms are "less intense" with increased dosage of medication; provider notes "in [his] opinion," Johnson's moods are still "not stable enough" for full-time work); AR 542 (March 2011: Johnson reports irritability); AR 687 (April 2011: Johnson reports more irritability and restlessness with increased stress); AR 685 (August 2011: Johnson reports anger during manic phases but that he has been getting along with his girlfriend; provider notes constricted affect and depressed and irritable mood); AR 579 (September 2011: Johnson reports mood is "depressed," "ok," "a little irritab[le]"); AR 785 (March 2012: when emergency room refused to give Johnson certain medications for pain, provider noted at discharge he was "very irritable," "anxious," and "generally upset," saying "you were less than helpful[] this has not been

14

a good night here"); AR 913 (May 2013: Johnson reports that he needs bipolar medication because he has "quick mood swings" and "[s]naps on people" and that he "doesn't go out much as he's not comfortable around people that he doesn't know"); AR 908, 911 (June 2013: when Johnson had not received some of his mental-health medications in a while, he was demanding, uncooperative, and angry with the provider and left the appointment, "wadd[ing] up" the slip of paper with his next appointment reminder on it; his mother accompanied him to his next appointment, indicating things might have gone better at the last appointment if she had been there); AR 930 (June 2013: Johnson reports that he continues to be very irritable and easily frustrated and that his girlfriend has been going to her sister's residence and ignoring him; provider notes his affect went from being agitated to crying); AR 926 (July 2013: Johnson reports his irritability responds well to stimulants; provider notes obsessive, preoccupied thoughts and angry and anxious mood and affect); AR 923 (July 2013: Johnson reports his girlfriend "still goes to her sister's in the evenings to get a break from him"); AR 919-20 (August 2013: Johnson reports a poor relationship with his girlfriend, and his mother, who had accompanied him to the appointment, interjects "he should extend his description to include almost everyone else" because he is "prickly and argumentative, irritable and angry"; provider notes obsessive, preoccupied thoughts and irritable and angry mood and affect); AR 916 (August 2013: Johnson's mental health is much improved back on "the right med[ications]"; he reports getting along better with his girlfriend, who no longer "has to leave to get away from him for awhile"); AR 900 (October 2013: Johnson reports difficulties getting along with his girlfriend's family); AR 1403 (June 2014: same); AR 1408 (July 2014: same; he reports "[h]e hardly leaves the house"); AR 1414 (October 2014: Johnson reports that things are "ok" with his girlfriend's family, but "[h]e doesn't want to deal with people"); AR 1421 (November 2014: Johnson reports things are going

15

well with his girlfriend because her family is staying away from him); AR 1431 (June 2015: Johnson reports difficulties interacting with his girlfriend's sister and that he got in a physical fight with his brother and no longer wishes to speak to him); AR 1444 (September 2015: Johnson reports he has not had contact with his brother and that things are going well with his girlfriend as her family is leaving him alone); AR 1467 (September 2015: Johnson reports he "doesn't get out very much"). Therefore, I find that the ALJ erred in failing to more fully discuss the social-functioning limitations found by the state agency psychological consultants.

I recommend remanding with instructions for the ALJ to either (1) impose limitations related to interacting with coworkers and supervisors, or (2) more fully discuss the failure to include these limitations, including what medical opinions support the lack of these limitations and an updated discussion on the weight to assign the state agency medical consultants' opinions. If the ALJ fails to adopt a limitation related to interacting with coworkers, the ALJ should point to specific medical evidence that supports this conclusion.

### B. Dr. Standing's Opinion and the Missing Treatment Records

Johnson challenges the weight the ALJ assigned to Dr. Standing's second RFC opinion. When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b).[13] "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126,

---

[13] I cite to the current regulations, which are substantively the same as the regulations in effect at the time of the ALJ's decision.

1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (alteration in original) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Id.* The ALJ considers the following factors to determine the weight to assign a medical opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Dr. Standing evaluated Johnson's physical RFC for a second time in August 2016. AR 1526-30. He opined that Johnson could walk for twelve city blocks before needing to rest; that he could stand for two hours at a time, for about four hours in a day; that he could sit for more than two hours at a time, for at least six hours in a day; that he must walk for ten minutes every thirty minutes and shift positions at will; that he would need to take two to three unscheduled breaks a day for ten to fifteen minutes; that he could frequently lift ten pounds and occasionally lift twenty pounds, but never more than that; and that he would miss work at least three times a month. AR 1528-30. The ALJ assigned little weight to this opinion. AR 956. The ALJ found it "significant[]" that the most recent treatment notes from Dr. Standing in the record were from October 2013,

17

noting that "[s]ince that time, [a treatment note] from June 2014 [from a different provider] indicated the claimant denied back pain," had "a normal gait without any assistive device," and had a normal objective examination except for some tenderness; and a treatment note from February 2015 indicated a normal physical examination and an improvement in Johnson's pain after injections. AR 956.

Johnson argues that the ALJ should not have relied on the lack of contemporaneous treatment notes from Dr. Standing, since the ALJ knew Johnson had an appointment scheduled with Dr. Standing for July 2016 (the upcoming appointment was mentioned at the hearing, and the ALJ agreed to keep the record open for any new treatment notes). AR 980-81. Moreover, Johnson argues that these 2016 treatment records were submitted to the Social Security Administration but misplaced, submitting a declaration from Johnson's counsel's legal assistant as support. Doc. 15-1. She avers that the 2016 treatment notes were submitted "via the Social Security Administration's Electronic Records Express on August 4, 2016." *Id.* Attached to the declaration is a confirmation of an uploaded file (labeled Medical Evidence of Record from Dr. Larry Standing, 6/23/2016 to 7/26/2016), as well as the missing treatment records. *Id.* As further support that the records were submitted, Johnson points to the ALJ's labeling of exhibit 34F (which according to the declaration, should contain the 2016 treatment records from Dr. Standing): "Office Treatment Records" from Dr. Standing received subsequent to hearing, dated August 29, 2011, to July 26, 2016. AR 972. Johnson also points to his arguments before the Appeals Council, which reflect his belief that the June 2016 treatment notes were already in the record. *See* AR 1223.

The Commissioner responds that Johnson does not argue that the new medical records attached to his brief warrant a sentence-six remand[14]—indeed, the Commissioner

---

[14] The sixth sentence of 42 U.S.C. § 405(g) provides:

contends Johnson cannot make that argument, as the new medical records "are not particularly probative and appear to be cumulative of Dr. Standing's other treatment notes in the record the ALJ considered." Doc. 16 at 7-8. In reply, Johnson suggests this is irrelevant, as the ALJ did not discount Dr. Standing's opinion based on inconsistency with his treatment notes; rather, the ALJ discounted Dr. Standing's opinion based on inconsistency with treatment notes from different providers who the ALJ believed had seen Johnson more recently.

In light of the fact that I have already recommended remanding this case for a different reason, and on remand, the 2016 records of Dr. Standing will likely be submitted into the record, I decline to decide whether the records were actually submitted or whether the ALJ should have obtained them. I agree with Johnson's reply argument that the ALJ may discount Dr. Standing's opinion because of inconsistencies with his treatment notes or inconsistencies with the record as a whole, but not because of two treatment notes from other providers based on the erroneous premise that they saw Johnson more recently than Dr. Standing. On remand, the ALJ should give updated reasons for the weight to assign Dr. Standing's 2016 opinion.

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

### *III.    CONCLUSION*

I recommend that the district court **reverse** the decision of the Social Security Administration, enter judgment in favor of Johnson, and **remand** for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.  *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 27th day of August, 2018.

*[signature: Kelly K.E. Mahoney]*
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa